UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY BARAHONA,

                      Plaintiff,

    -v-

THE CITY OF NEW YORK, New York City Police Department ("NYPD") Officers JOHN DOE 1 and 2 (the names "John Doe" being fictitious, as the true names and shield numbers are not presently known), in their individual capacities,

                      Defendants.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**15 CV 7290 (JMF) (RLE)**

    ANTHONY BARAHONA, by his attorney REBECCA HEINEGG, as and for his complaint, does hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983; and pendant claims under the Constitution of the State of New York, Article I, §§ 6, 11, and 12, and the laws of the State of New York.

2. Plaintiff ANTHONY BARAHONA's rights were violated when he was violently beaten by officers of the New York City Police Department ("NYPD"), who unconstitutionally and without any legal basis seized, detained, and subjected him to excessive force.

3. Mr. BARAHONA's assault is characteristic of a pattern and practice of the NYPD in aggressive overpolicing of people of color and fostering an atmosphere in which such behavior is accepted. MR. BARAHONA's assault was based on perceptions of his race and ethnicity.

1

4. By reason of defendants' actions, Mr. BARAHONA was deprived of his constitutional rights.

5. Mr. BARAHONA seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments of the Constitution of the United States.

7. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

8. This Court has supplemental jurisdiction over plaintiff's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9. Pursuant to New York State General Municipal Law § 50-E, plaintiff filed a timely Notice of Claim with the New York City Comptroller on or about June 24, 2014. Plaintiff's claim was not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

10. Venue is proper pursuant to 28 U.S.C. §1391(b) in that defendant THE CITY OF NEW YORK resides in the Southern District of New York.

11. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

12. Plaintiff ANTHONY BARAHONA is a Latino male, and at all times relevant to this action was a resident of Kings County, New York.

13. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

14. Defendants NYPD Officers JOHN DOE 1 and 2 ("individual defendants") were at all times relevant herein officers, employees and agents of the NYPD. At all times relevant to this action, the individual defendants were acting under color of state law as agents, servants, employees and officers of the NYPD. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD.

15. The true names and shield numbers of defendants JOHN DOE 1 and 2 are not currently known to plaintiff. However, all of said defendants are employees or agents of the NYPD. JOHN DOE 1 was an African-American male, approximately 5'9" – 5'10", with a beard. JOHN DOE 2 was a light-skinned male, approximately 5'10" – 5'11", clean-shaven, with short hair. Both defendants were in their mid-twenties to mid-thirties.

16. The individual defendants are being sued in their individual capacities.

17. Defendants' acts herein complained of were carried out intentionally, recklessly, and with malice and gross disregard for plaintiff's rights.

## STATEMENT OF FACTS

18. The incident alleged herein occurred at approximately 1:30a.m. on June 18, 2014 in the vicinity of Myrtle Avenue and Broadway in Kings County, New York, and continued thereafter as set forth below.

19. At the time and place set forth in paragraph 18, Mr. BARAHONA was lawfully present on the platform of the JMZ Metropolitan Transit Authority station, helping a sick friend.

20. The two individual defendants approached Mr. BARAHONA and told him to leave the station.

21. Mr. BARAHONA asked why he had to leave.

22. The individual defendants identified themselves as police officers and demanded that Mr. BARAHONA produce identification.

23. Mr. BARAHONA produced two forms of identification.

24. One of the officers examined Mr. BARAHONA's identification, said in sum and substance "THIS DOESN'T MEAN ANYTHING TO ME," and threw Mr. BARAHONA's papers on the ground.

25. One of the individual defendants called Mr. BARAHONA an "immigrant dog."

26. When Mr. BARAHONA responded that the officer was being racist, one of the individual defendants said, in sum and substance, "YOU WANT TO SEE RACIST?"

27. One of the individual defendants then grabbed Mr. BARAHONA by the hair on his head, while the other individual defendant punched Mr. BARAHONA in the face.

28. The individual defendants then proceeded to beat Mr. BARAHONA until he was bleeding profusely.

29. The individual defendants then left the station, leaving Mr. BARAHONA bleeding on the platform.

30. As a result of this incident, Mr. BARAHONA suffered physical, psychological and emotional injuries, loss of liberty, mental anguish, suffering, humiliation, and embarrassment.

**<u>FIRST CAUSE OF ACTION</u>**
**DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**

31. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. Defendants, under color of state law, unlawfully seized, detained, and assaulted plaintiff and subjected him to the excessive use of force.

33. Defendants' actions were based on their perception of plaintiff's race and ethnicity, and not on any conduct on the part of plaintiff.

34. By the conduct described above, defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions without due process of law and in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, thereby depriving plaintiff of his rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

    a. Freedom to engage in protected speech, expression and association;

    b. Freedom from unreasonable seizures of his person;

    c. Freedom from the use of excessive force by law enforcement officers;

    d. The enjoyment of equal protection, privileges and immunities under the laws.

35. As a result of defendant's deprivation of plaintiff's constitutional rights, plaintiff was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, mental anguish, lost wages, humiliation and embarrassment, costs and expenses, and was otherwise damaged and injured.

**SECOND CAUSE OF ACTION**
*MONELL* CLAIM AGAINST DEFENDANT CITY - 42 U.S.C. § 1983

36. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. All of the acts and omissions by the individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

38. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

39. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

40. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Racial profiling;

    b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    c. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    d. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

41. The existence of the aforesaid unconstitutional customs and practices is evidenced, *inter alia*, by the following:

    a. In *Floyd v. City of New York*, 08 Civ. 1034 (SAS) (S.D.N.Y, Aug. 12, 2013) the Honorable Shira Scheindlin found, after a two-month bench trial, that the NYPD engages in a widespread and systemic practice of racial profiling, and that senior NYPD officials are deliberately indifferent to these patterns and practices.

    b. In a class action lawsuit filed on August 31, 2015, twelve Latino and African-American NYPD officers assert that they have been harassed, given poor evaluations, denied benefits, transferred to undesirable posts and threatened with termination because they are "unwilling to perform racially discriminatory and unwarranted enforcement actions against the minority community." *Raymond v. City of New York*, 15 CV 6885 (LTS) (S.D.N.Y. Aug. 31, 2015).

    c. In a special report published by Reuters on December 23, 2014, a number of African-American NYPD officers asserted that they had been racially profiled when off duty, including "being pulled over for no reason, having their heads slammed against their cars, getting guns brandished in their faces, being thrown into prison vans and experiencing stop and frisks while shopping."[1]

    d. In 2012, three NYPD detectives testified that their superiors regularly used racial slurs in the workplace.[2]

    e. In 2009, NYPD Officer Adrian Schoolcraft was involuntarily committed to a psychiatric ward by his precinct commander after exposed a precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury.[3]

    f. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in *Colon v. City of New York*, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, then-Commissioner Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[4]

    g. *Walton v. Safir*, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

---

[1] Michelle Conlin, *Off duty, black cops in New York feel threat from fellow police*, Reuters, Dec. 23, 2014 *available at* http://mobile.reuters.com/article/idUSKBN0K11EV20141223.

[2] John Marzulli, *NYPD Race Case Shocker*, Daily News, April 16, 2012 *available at* http://nydailynews.com/new-york/elite-nypd-anti-gun-unit-accused-treating-black-suspects-animals-article-1.1062188.

[3] Graham Rayman, *The NYPD Tapes Confirmed*, Village Voice, March 7, 2012, *available at* http://www.villagevoice.com/news/the-nypd-tapes-confirmed-6434290.

[4] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

h. *White-Ruiz v. City of New York*, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

i. *Ariza v. City of New York*, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

j. In 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

k. The Mollen Commission report states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted - especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority - which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[5]

l. Upon information and belief, Defendant CITY did not take meaningful steps to eliminate the customs and practices exposed by the Mollen Commission Report.

m. *Sorlucco v. New York City Police Department*, 89-CV-7225 (CCH), 888 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her);

n. *Bryant v. City of New York*, 22011/2007 (Sup. Ct., Kings Co.) (jury declares that NYPD officers acted pursuant to a City policy regarding the number of arrests officers were expected to make that violated plaintiff's constitutional rights and contributed to her arrest);[6]

---

5  Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

6  For a description of this case and ultimate settlement, *see* Oren Yaniv, *Court rules that cops do use quotas, woman injured in 2006 arrest settles for $75,000*, N.Y. Daily News, Feb. 19, 2011, *available at*

8

- o. *Carmody v. City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

- p. *Powers v. City of New York*, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

- q. *Nonnemann v. City of New York*, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth); and

- r. *Barry v. New York City Police Department*, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers").

- s. Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

- t. In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

- u. Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

- v. *Barry v. New York City Police Dep't*, 2004 U.S. Dist. LEXIS 5951, 40-41 (S.D.N.Y. April 7, 2004) ("[P]laintiff's witnesses speak from firsthand experience about the blue wall of silence…. Plaintiff complains of acts that are of the precise nature as the customs and practices described in the [Mollen Commission] Report.");

- w. *United States v. Rosario*, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ("[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997.")

42. The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY.

---

http://www.nydailynews.com/news/ny_crime/2011/02/19/2011-02-19_court_rules_that_cops_do_use_quotas_woman_injured_in_2006_arrest_settles_for_750.html.

43. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors and commanders who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia*, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

44. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 37, above.

45. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

46. Defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and

regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

47. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

48. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff. Pursuant to the aforementioned CITY policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights.

49. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

### THIRD CAUSE OF ACTION
### ASSAULT AND BATTERY
### UNDER THE LAWS OF THE STATE OF NEW YORK

50. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

51. By the actions described above, defendants did inflict assault and battery upon plaintiff.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

52. As a result of the foregoing, plaintiff suffered injuries and damages as set forth above.

### FOURTH CAUSE OF ACTION
### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK
### FOR VIOLATIONS OF THE LAWS OF THE STATE OF NEW YORK

53. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

54. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

55. As a result of the foregoing, plaintiff suffered injuries and damages as set forth above.

### FIFTH CAUSE OF ACTION
### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING
### UNDER THE LAWS OF THE STATE OF NEW YORK

56. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

57. Defendant CITY negligently hired, screened, retained, supervised, and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

58. As a result of the foregoing, plaintiff suffered injuries and damages as set forth above.

## JURY DEMAND

59. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

   a. That he be compensated for violations of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

   b. That he be awarded punitive damages against the individual defendants; and

   c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

   d. For such other further and different relief as to the Court may seem just and proper.

Dated:   New York, New York
         October 23, 2015

                                          Respectfully submitted,

                                  By:    _____/s/_____
                                          Rebecca Heinegg
                                          *Attorney for the Plaintiff*
                                          42 Broadway, Suite 12-122
                                          New York, New York 10004
                                          t: (212) 227-2303
                                          f: (212) 320-0230